**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEDRICK MATTHEWS (#383290)** | **CIVIL ACTION NO.** |
| **VERSUS** | **21-571-BAJ-EWD** |
| **TIM HOOPER, ET AL.** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 26, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DEDRICK MATTHEWS (#383290)**             **CIVIL ACTION NO.**

**VERSUS**            **21-571-BAJ-EWD**

**TIM HOOPER, ET AL.**

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Before this Court is a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By A Person in State Custody ("Petition"), filed by Dedrick Matthews ("Matthews"). It is recommended that the Petition be denied. Claims 4 and 6 are unexhausted and procedurally defaulted, and the rest of the claims do not have merit. There is no need for oral argument or for an evidentiary hearing.

### I. PROCEDURAL HISTORY

On May 29, 2014, Matthews was indicted by a grand jury in Louisiana state court for two counts of vehicular homicide, a violation of La. R.S. 14:32.1, in the deaths of Johnny Galmon (Count I) and Kandace Cox (Count II), and two counts of first degree vehicular negligent injuring, a violation of La. R.S. 14:39.2, for the infliction of serious bodily injury upon Tyquincia Barnes (Count III) and Khadijah Johnson (Count IV).[1] After a three-day jury trial in March 2018, Matthews was found guilty as charged.[2] On each count of vehicular homicide, he was sentenced to twenty-five years at hard labor with the first three years to be served without the benefit of probation, parole, or suspension of sentence. On each count of first degree negligent injuring, he

---

[1] R. Doc. 22-1, pp. 53-54.
[2] R. Doc. 22-20, p. 67.

was sentenced to five years at hard labor. The sentences were ordered to run consecutively for a total sentence of sixty years.[3]

Matthews filed a direct appeal with the Louisiana First Circuit Court of Appeals ("First Circuit"), which affirmed his convictions and sentences on February 25, 2019.[4] Matthews sought review at the Louisiana Supreme Court, which denied the writ application on September 17, 2019.[5] He sought further review at the United States Supreme Court, which also denied certiorari on March 2, 2020.[6] On or about August 3, 2020, Matthews filed an application for post-conviction relief ("PCR application") with the trial court.[7] By Order, dated February 4, 2021, the trial court dismissed the PCR application on the merits based on the Commissioner's Recommendation.[8] Matthews sought review at the First Circuit, which denied writs on November 29, 2021.[9] Matthews sought review at the Louisiana Supreme Court, which did not consider the writ application, finding in an Opinion, dated April 12, 2022, that the application was not timely filed under Louisiana Supreme Court Rule X § 5(a).[10]

On September 28, 2021, Matthews filed his Petition with this Court.[11] He then filed several motions to amend his Petition to withdraw, add, and/or rephrase claims. After amendment, the following five claims are currently before the Court: (1) "insufficient evidence exist [sic] to prove

---

[3] R. Doc. 22-1, pp. 46-47. Post-trial motions and motions to reconsider sentences were all denied. R. Doc. 22-1, pp.8-9, 48-49; R. Doc. 22-21, p. 3.
[4] R. Doc. 23-1, pp. 246-274; *State v. Matthews*, 2018-1107 (La.App. 1 Cir. 2/25/19), 2019 WL 927849 (unpub.).
[5] *State v. Matthews*, 2019-501 (La. 9/17/19), 279 So.3d 379. The writ application to the Louisiana Supreme Court contains the same arguments as the direct appeal to the First Circuit. R. Doc. 23-1, pp. 202-224.
[6] *Matthews v. Louisiana*, 140 S.Ct. 1286, 206 L.Ed.2d 266 (2020).
[7] R. Doc. 23-3, pp. 48-70.
[8] R. Docs. 32-2, pp. 49-58; R. Doc. 32-3, p. 41.
[9] *State v. Matthews*, 2021-1101 (La.App. 1 Cir. 11/29/21), 2021 WL 5563998.
[10] *State v. Matthews*, 2022-00198 (La. 4/12/22), 335 So.3d 840, reconsideration denied, 2022-00198 (La. 9/27/22), 346 So.3d 807.
[11] An inmate's pleadings are generally considered filed on the date presented to prison officials or placed into the prison mailing system to be sent to the court, not on the date that they are ultimately received or docketed by the court. *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 07-5471, 2008 WL 553186, at *3 (E.D. La. Feb. 28, 2008). The Petition is signed September 28, 2021, which is considered the filing date although it was not actually docketed until October 4, 2021. R. Doc. 1.

beyond a reasonable doubt the killing of a human being as an element of vehicular homicide" in violation of Fourteenth Amendment Due Process;[12] (2) "insufficient evidence exist [sic] to prove beyond a reasonable doubt the inflicting of serious bodily injury as element of 1st degree vehicular negligent injury in violation of the Fourteenth Amendment Due Process;"[13] (3) "convictions obtained by use of evidence gained pursuant to an unconstitutional search and seizure" (based on fruits of a warrantless blood test) in violation of Fourteenth Amendment Due Process;[14] (4) convictions based on ineffective counsel in violation of Sixth and Fourteenth Amendments;[15] (5) withdrawn;[16] and (6) "trial court was without jurisdiction to try and punish for a crime based on an invalid Indictment" (not filed in open court in violation of Fourteenth Amendment Due Process).[17]

## II.  FACTUAL BACKGROUND

The following facts are summarized from the First Circuit's opinion affirming Matthews' convictions and sentences on direct appeal:[18]

During the early morning hours of March 30, 2014, Johnny Galmon ("Galmon"), Kandace Cox ("Cox"), Tyquinicia Barnes ("Barnes"), and Barnes' sister, Khadijah Johnson ("Johnson"), were riding in Galmon's two-door Honda Accord on Interstate 10, near Baton Rouge. During the drive, the car had a flat tire, which Cox and Galmon fixed with a spare donut tire on the roadside

---

[12] R. Doc. 1, p. 5; R. Doc. 1-1, pp. 8-9; R. Doc. 11, p. 8. When used in brackets after a quoted word, "sic" is used to show that, although the word may be incorrect, it is quoted exactly as it was in the original document.
[13] R. Doc. 1, p. 8; R. Doc. 11, p. 10.
[14] R. Doc. 1, p. 10; R. Doc. 11, p. 11.
[15] R. Doc. 1, p. 13; R. Doc. 11, p. 13.
[16] R. Doc. 12. This Report uses the same numbering of claims as Matthews for ease of reference. Claim five included convictions based on offenses not charged in the indictment in violation of the Fourteenth Amendment, but this claim was withdrawn. *See* R. Doc. 11, p. 21; R. Doc. 21; R. Doc. 29.
[17] R. Doc. 1, p. 22; R. Doc. 1-1, p. 20; R. Doc. 12.
[18] *State v. Matthews*, 2019 WL 927849, at pp. *2-5. Other relevant facts are discussed, below, when analyzing the merits of Matthews' claims.

3

at the I-10/I-110 split at the base of the Horace Wilkinson Bridge over the Mississippi River between Baton Rouge and Port Allen.

After putting on the spare, the group continued onto the bridge at a very slow speed, approximately 20 mph, in the far right-hand lane. Matthews' vehicle then collided with the Honda from behind. Evidence at trial showed that, at impact, Matthews' vehicle had slowed from 99 mph to 93 mph. An accident reconstruction specialist testified that Matthews likely noticed something in the road approximately 0.6 seconds before impact and began braking 0.4 seconds before impact. The collision left Galmon and Cox dead and Barnes and Johnson severely injured.

Lieutenant Cory Reech responded to the accident, noted the odor of alcohol on Matthews' breath, and that Matthews had slurred speech and glassy red eyes. At the scene, Matthews told Lt. Reech that he was driving the vehicle, that he was "momentarily distracted by his passenger," and that "the next thing he knew," his vehicle struck the Honda. Matthews also admitted he had consumed two to three drinks at a casino. According to Lt. Reech, field sobriety tests indicated a likelihood that Matthews was under the influence of alcohol. Matthews initially agreed to go to the station to submit to a breathalyzer test, but after four failed attempts to provide a sufficient breath sample, Lt. Reech determined Matthews was purposefully evading the test, and, because the crash included fatalities, Lt. Reech decided that a chemical blood test was necessary.

At trial, evidence was introduced that Matthews' blood sample had a blood alcohol concentration ("BAC") of 0.11. The State stipulated at trial that victim Galmon also had a BAC of 0.11, as well as a positive reading for alprazolam in the amount of 4.1 ng/ml. The State noted the therapeutic range for alprazolam is between 10 and 40 ng/ml.

4

### III.    CLAIMS 4 AND 6 ARE UNEXHAUSTED AND SHOULD BE DISMISSED AS PROCEDURALLY DEFAULTED

One of the threshold requirements for a § 2254 petition is that, subject to certain exceptions, the petitioner must have first exhausted all of his claims in state court before presenting them to the federal court.[19] "For a claim to be exhausted, the state court system must have been apprised of the facts and the legal theory upon which the petitioner bases his assertion."[20] The goal of the exhaustion requirement is to give state courts the first chance to review claims of constitutional error which promotes comity and ensures a more complete factual record will be developed that will aid federal courts in their review.[21] The Supreme Court has interpreted § 2254(b)(1) to require dismissal of a habeas corpus petition if it contains even a single unexhausted claim – the "total exhaustion" requirement.[22]  In other words, generally, when a petition contains both exhausted and unexhausted claims, the whole petition must be dismissed.  However, when the unexhausted claims could no longer be brought in the state court, those claims are procedurally defaulted for purposes of federal habeas review, and the presence of those claims in the federal petition does not require dismissal of the whole case.[23]

Respondents argue that claims 4 and 6 are unexhausted and procedurally defaulted.[24] Claims 4 and 6 were raised in Matthews' PCR application,[25] and were presented and denied on

---

[19] 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State....").
[20] *Galtieri v. Wainwright*, 582 F.2d 348, 353 (5th Cir. 1978) (*en banc*).
[21] *Rose v. Lundy,* 455 U.S. 509, 518-19 (1982).
[22] *Rose,* 455 U.S. at 522 (holding that a federal habeas petition that contains both exhausted and unexhausted claims must be dismissed).
[23] The 'mixed petition rule' does not apply when state procedural rules would prevent the petitioner from raising his unexhausted claims in state court. Rather, in such cases, federal courts should examine the unexhausted claims under the procedural default doctrine and should consider the properly exhausted claims on the merits. *See Panetti v. Cockrell*, 73 Fed.Appx. 78 (5th Cir. 2003) (citations omitted).
[24] R. Doc. 35, pp. 27-31; R. Doc. 42, pp. 2-7.
[25] R. Doc. 23-3, pp. 52-53.

the merits by the First Circuit,[26] but were presented and denied as untimely by the Louisiana Supreme Court, applying Louisiana Supreme Court Rule X, § 5(a)—a state procedural rule.[27] Generally, a federal court will not review a question of federal law presented to a state habeas court if the decision of the state court rests on a state law ground that is both independent of the federal claim and adequate to support the judgment.[28] A federal court that reviews a state prisoner's habeas claim must respect a state court's determination that the claim is procedurally barred under state law.[29] Therefore, a federal habeas court should determine as an initial matter whether procedural default has occurred on any asserted claim.[30]

Matthews' failure to timely present claims 4 and 6 to the Louisiana Supreme Court creates a procedural default for the purposes of federal habeas review.[31] The Louisiana Supreme Court relied on state procedural rules, specifically La. S. Ct. Rule X §5, when dismissing his request to review the denial of his PCR application.[32]

As the Louisiana Supreme Court's reason for dismissing Matthews' request for review of the denial of his PCR application was independent of (did not rely on) federal law, this Court need only consider whether the state procedural bar was adequate, which is a federal question.[33] To be

---

[26] R. Doc. 32-4, p. 51. Because the First Circuit did not explicitly rely on a procedural rule in denying the writ, it appears the writ was denied on the merits.
[27] R. Doc. 23-3, p. 77.
[28] *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).
[29] *Williams v. Cain*, 125 F.3d 269, 275 (5th Cir. 1997), citing *Wainwright v. Sykes*, 433 U.S. 72, 90-91(1977).
[30] *See, e.g., Carter v. Vannoy*, 14-2407, 2015 WL 3404068, at *4 (E.D. La. May 26, 2015), citing *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997)('The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court, *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in 'procedural default.'")
[31] *See Magourik v. Phillips,* 144 F.3d 348 (5th Cir. 1998) (petitioner's failure to present claim to Louisiana Supreme Court results in procedural default).
[32] *State v. Matthews*, 2022-198 (La. 4/12/22) 335 So.3d 840. Matthews filed the action here on October 4, 2021, before the Louisiana Supreme Court denied the writ seeking review of dismissal of his PCR Application. Even though the claims were not fully exhausted before the Petition was filed in this Court, because the claims are procedurally defaulted and would have been procedurally defaulted had Matthews waited to file, the analysis is the same. *See Laneheart v. Louisiana*, No. 21-443, 2022 WL 635431, at 10 (E.D. La. Feb. 4, 2022).
[33] *See Carter*, 2015 WL 3404068, at *6.

adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.[34] In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.[35] However, when state courts apply a procedural bar that has no foundation in the record or basis in state law, federal courts need not honor that bar.[36] A state procedural rule is presumed to be adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.[37] Louisiana Supreme Court Rule X § 5 is an independent and adequate state ground for dismissal.[38]

Because the decision of the Louisiana Supreme Court did not rest on federal law and was, instead, based on an independent and adequate state procedural rule, this Court cannot reach the merits of the claims without a showing of cause and prejudice or a fundamental miscarriage of justice. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[39]

Matthews has not explained his failure to properly exhaust claims 4 and 6 through the state courts, and there is no reason for failure to properly exhaust on the face of the record.[40] As there

---

[34] *Walker v. Martin*, 562 U.S. 307, 316-17 (2011).
[35] *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).
[36] *See Johnson v. Lensing*, No. 99-5, 1999 WL 562728, at *4 (E. D. La. Jul. 28, 1999).
[37] *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).
[38] *See e.g., Wright v. Tanner,* 17-4187, 2019 WL 3859025, at *6 (E.D. La. Aug. 16, 2019) (holding that La. S. Ct. Rule X, § 5 provides an independent and adequate ground for dismissal).
[39] *Coleman*, 501 U.S. at 750.
[40] Though Matthews argues that his writ to the Louisiana Supreme Court was incorrectly denied as untimely because that court did not follow the prison mailbox rule (R. Doc. 36, p. 3), this is incorrect. Matthews' writ to the First Circuit was denied on November 29, 2021. R. Doc. 23-3, p. 12. La. S. Ct. Rule X § 5 gave Matthews until December 29,

is no cause for the default, there is no need to consider whether Petitioner suffered prejudice.[41] Because they are unexhausted and procedurally defaulted, Claims 4 and 6 should be dismissed with prejudice.

### IV. THE REST OF MATTHEWS' CLAIMS LACK MERIT[42]

#### A. Relevant Legal Standards

Under 28 U.S.C. § 2254(d), an application for a writ of habeas corpus shall not be granted on any claim that a state court has decided on the merits unless the decision has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[43] Relief is authorized if a state court arrived at a conclusion contrary to that reached

---

2021, thirty days later, to file his writ with the Louisiana Supreme Court. Matthews' writ application to the Louisiana Supreme Court is dated January 7, 2022. R. Doc. 23-3, p. 11. It seems Matthews believes that the time to file his writ with the Louisiana Supreme Court did not start to run until his application for rehearing was denied at the First Circuit on December 30, 2021, but this is incorrect. As noted in the First Circuit's denial of the application for rehearing "[a]n application for rehearing is not considered if this court denied the original writ application. See Uniform Rules of Louisiana Courts of Appeal, Rules 2-18.7 & 4-9." R. Doc. 23-3, p. 13. La. S. Ct. Rule X § 5 only allows for writs to be filed within thirty days of the mailing of the notice of denial of rehearing "in those instances where a rehearing is allowed" which was not the case, here. Accordingly, the Louisiana Supreme Court was not incorrect in denying Matthews' writ as untimely under its rules, as argued by Matthews.

[41] See *Glover*, 128 F.3d at 904 n. 5. This Court also need not analyze whether failure to consider the claims will result in a fundamental miscarriage of justice. Nothing in the record indicates that Matthews is actually innocent of the crimes for which he was convicted. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) ("the fundamental miscarriage of justice exception is confined to cases of actual innocence.").

[42] Review of the merits of claims 1, 2, & 3 is based on the Court's discretion, though it may be debatable whether those claims were properly exhausted. 28 U.S.C. § 2254(b)(2); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1999) (the Court has discretion to deny relief on the merits regardless of whether the claims have been fully exhausted). For example, it does not appear that Matthews exhausted his claim that there was insufficient evidence to show that the surviving victims suffered serious bodily injury, one element of the crime of first-degree negligent injuring. However, the claim fails on the merits, as discussed below. Respondents also did not raise a procedural objection to these claims.

[43] For the claims decided by a state court on the merits, deference to that decision generally applies under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The deferential standards of review apply to claims decided on the merits by the state courts—the statute does not distinguish between claims fully exhausted and claims simply "adjudicated on the merits in State court." 28 U.S.C. § 2254(d). See *Bedoya v. Tanner*, No. 12-1816, 2019 WL 1245655 at *10-11 (E.D. La. Feb. 20, 2019) (discussing AEDPA's standards of review even though some claims were only exhausted at the state trial court level).

8

by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court on materially indistinguishable facts.[44]

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.[45] Mere error by the state court or this Court's disagreement with the state court decision is not enough; the standard is one of objective reasonableness.[46] State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.[47] For purposes of AEDPA deference, the last reasoned state court opinion on claims 1 and 2 is the decision from the First Circuit on direct appeal. On claim 3, it is the trial court's order on the Motion to Suppress.[48]

### B.  Claims 1 and 2: Convictions Based on Insufficient Evidence

The Supreme Court's decision in *Jackson v. Virginia*,[49] provides the standard for testing whether enough evidence supports the conviction in a federal habeas case.  The question "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[50] Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence offered at the petitioner's state court trial.[51] State law defines the

---

[44] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).
[45] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).
[46] *Id.  See also Williams*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").
[47] 28 U.S.C. § 2254(e)(1).
[48] *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion…a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").
[49] 443 U.S. 307 (1979).
[50] *Id*. at 319 (emphasis in original), citing *Johnson v. Louisiana*, 406 U.S. [356] at 362 [1972)].
[51] *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005); *Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989).

9

substantive elements of the offense, and a state court determination that the evidence was enough to meet the elements of the offense is given great weight on federal habeas review.[52]

Matthews was charged and convicted of two counts each of vehicular homicide, in violation of La. R.S. 14:32.1, and first degree vehicular negligent injuring, in violation of La. R.S. 14:39.2. At the time of the crime, in 2014, La. R.S. § 14:32.1 defined vehicular homicide, in relevant part, as follows:

> A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exist and such condition was a contributing factor to the killing:
> (1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
> (2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
> ***
> (4) The operator is under the influence of alcoholic beverages.[53]

Similarly, La. R.S. § 14:39.2 defined first degree vehicular negligent injuring, in relevant part, as follows:

> A. First degree vehicular negligent injuring is the inflicting of serious bodily injury upon the person of a human being when caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance whenever any of the following conditions exists:
> (1) The offender is under the influence of alcoholic beverages.
> (2) The offender's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.[54]

---

[52] *Dickinson v. Cain*, 211 F.3d 126 (Table), 2000 WL 310140, at *5 (5th Cir. 2000); *Hawkins v. Lynaugh*, 844 F.2d 1132, 1134 (5th Cir. 1988).
[53] La. R.S. § 14:32.1 (eff. June 7, 2012).
[54] La. R.S. § 14:39.2 (eff. Sept. 30, 2003).

10

The question of whether the two counts of vehicular homicide were adequately proven appears to be twofold: (1) was Matthews' intoxication a contributing factor to the deaths; and (2) whether there was enough evidence to show that the deaths were caused by the collision.[55] Squarely before the First Circuit was whether Matthews' intoxication was a contributing factor to the deaths. The First Circuit analyzed the claim using the standard set forth in *Jackson* and found that the evidence was sufficient to convict, noting, in particular, that the evidence established that Matthews was maintaining a speed of 99 mph until 0.6 seconds before impact, based on data recovered from his vehicle.[56] The First Circuit considered evidence presented by Matthews' expert that "attempted to explain that a slow moving vehicle would be a looming danger for cars approaching it quickly from behind" but found that the expert's testimony was negated by the fact that Matthews "plainly did not see the vehicle at all until it was too late."[57] Further, Matthews' own expert testified that a "normal driver operating a car at 100 mph is more attentive to traffic in front of him and normal reaction times do not 'apply to him.'"[58] The First Circuit summed this evidence up by stating "[i]t defies rationality to find [Matthews'] excessive speed and inattentiveness due to his 0.11 BAC did not, at a minimum, contribute to the fatal collision," and concluded that "viewing the evidence in a light most favorable to the prosecution, it was well within the fact finders' ambit to find credible State evidence indicating [Matthews'] intoxication was a contributing factor to his reacting to the victims' car only 0.6 seconds before impact."[59] This

---

[55] The argument on direct appeal focused on whether Matthews' intoxication was a contributing factor to the collision. Giving a broad reading to the counseled direct appeal brief, it also raised, indirectly, the claim that the coroner failed to testify, so the element of homicide had not been sufficiently proven. R. Doc. 23-1, pp. 258-59. Though it appears the claim regarding lack of evidence of serious bodily injury for counts III and IV is unexhausted, the State did not argue for dismissal of the claim on procedural grounds, and this Report has examined both claims on the merits, under the Court's discretion.
[56] *State v. Matthews*, 2019 WL 927849, at *6.
[57] *Id.* (internal quotation marks omitted).
[58] *Id.* (internal quotation marks omitted).
[59] *Id.* at *6-7.

11

analysis and conclusion are not contrary to clearly established federal law, nor based on an unreasonable determination of the facts considering the evidence presented.

Matthews also argues that Galmon's intoxication and/or the failure of the victims to wear seatbelts could have been the proximate cause of death, rather than his intoxication.[60] However, as noted by the First Circuit, under state law, the State only had to prove that Matthews' intoxication was a *contributing factor* to the collision to prove vehicular homicide, not that it was the only cause.[61] Matthews' argument is misplaced because, even if there were other contributing factors, there was enough evidence to show that Matthews' intoxication *also* contributed to the deaths of Galmon and Cox. Specifically, the following evidence, was presented at trial to show that Matthews' intoxication was a contributing factor to the accident.

Lt. Reech, an officer who investigated the crash, testified that when he spoke with Matthews at the scene, "he had a distinct unmistakable odor of an alcoholic beverage on his breath…he had glassy eyes, red eyes. His speech was slurred. He was lethargic. His eye lids were more closed than open, just kind of had a droopiness about him….he was not very alert."[62] The officer also testified that he performed the horizontal gaze nystagmus ("HGN") test on Matthews, which is a test to indicate whether a person is intoxicated or under the influence of drugs.[63] The test has six "clues" to indicate impairment, and Matthews was positive for six of six. At that point, Lt. Reech determined a chemical test for intoxication was necessary.[64] Because he was unable to obtain a breath test on Matthews, blood was drawn for a blood alcohol analysis. At trial, a crime lab analyst testified that the blood alcohol analysis showed that Matthews had a BAC of 0.11 grams

---

[60] R. Doc. 1-1, p. 9.
[61] The evidence was analyzed considering the First Circuit's interpretation of state law. It found that under both the vehicular homicide statute and the first degree vehicular negligent injuring statute, the State only had to show that Matthews' intoxication was a contributing factor to the deaths, not the sole cause. *Id.* at *5 (citations omitted).
[62] R. Doc. 22-16, pp. 65-66.
[63] R. Doc. 22-16, pp. 68-73.
[64] R. Doc. 22-16, pp. 74.

percent.[65] La. R.S. 14: 32.1(A)(2) provides that a BAC over .08 is one of the conditions that can be shown as a contributing factor to the death for a vehicular homicide charge.

The state's accident reconstruction expert[66] testified that Matthews was traveling at 99 mph and at only 0.6 seconds prior to the crash, he removed his foot from the accelerator, engaged the brake, and impact with the victims' vehicle occurred.[67] In that amount of time, the speed of Matthews' car only dropped from 99 to 93 mph.[68] This expert also testified that the Dodge Charger Matthews was driving traveled an additional 892 feet from the point of impact before stopping.[69] This evidence, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find that Matthews' intoxication was a contributing factor to the accident to support a guilty verdict on the charges of vehicular homicide and first-degree negligent injuring.

To the extent Matthews argues that the actual cause of death was not established at trial, that claim also fails.[70] Matthews argued tangentially on appeal that there was not enough evidence to show that the crash is what killed Galmon and Cox because the coroner did not testify.[71] The First Circuit did not squarely address this argument.[72] Regardless of whether this claim was properly exhausted, it still fails on the merits. The accident reconstruction expert testified at trial that two deceased individuals were on the scene when he arrived—Galmon and Cox.[73] Considering all the testimony about the speed of the cars at the time of impact, the condition of the car the victims were in, and the testimony identifying the victims, any rational juror could have

---

[65] R. Doc. 22-19, pp. 28, 57.
[66] R. Doc. 22-17, pp. 73-76.
[67] R. Doc. 22-19, p. 9.
[68] R. Doc. 22-19, pp. 9-10.
[69] R. Doc. 22-19, p. 10.
[70] R. Doc. 1-1, p. 9.
[71] R. Doc. 23-1, p. 258.
[72] Matthews' claims in this case are read broadly out of an abundance of caution. It is unclear whether Matthews is arguing that something other than the collision caused the deaths of Galmon and Cox or if he is simply continuing to argue that his intoxication was not the only cause of their deaths.
[73] R. Doc. 22-18, pp. 3-4.

concluded that Galmon and Cox were killed due to the severe collision caused by Matthews, even without testimony from a coroner or a coroner's report.[74] Therefore, this argument is without merit.[75]

Additionally, Matthews claims that there was not enough evidence to convict him on Counts III and IV because the evidence did not show that the two surviving victims had "serious bodily injury" to support a claim of first degree negligent injuring under La. R.S. § 14:39.2. He argues that the victims' testimony about their injuries was not enough and that hospital records should have been introduced.[76] The evidence at trial about the injuries suffered by the two surviving victims included their testimony. Tyquincia Barnes testified she was in the hospital for weeks following the crash and that the right side of her face was crushed, requiring her to have two plates put in the right side of her face.[77] She also testified that she had to have a pin placed in her left shoulder, and her stomach was opened up because her pancreas had ruptured.[78] Barnes also had a rod in her left arm and pins through her pelvis and back because she broke her left pelvis.[79] When released from the hospital, she could not walk or feed herself, and her recovery took approximately five months.[80] Kahdijah Johnson also testified as to the injuries she sustained,

---

[74] There were also photographs shown to the accident reconstruction expert that included the deceased victims. He testified that one photograph showed a yellow blanket covering Galmon. R. Doc. 22-18, p. 72. He also pointed out the other deceased victim, Cox, in a photograph. R. Doc. 22-18, pp. 73, 76.

[75] Matthews admitted, through counsel, on direct appeal that the coroner's reports were admitted into evidence at trial. R. Doc. 23-1, pp. 258-59. However, in the Petition, he states that the coroner's reports were not offered into evidence at trial. R. Doc. 1-1, p. 11. The reports indicate that the cause of death for Cox was "blunt force injuries of head and torso, Due to vehicle occupant struck by motor vehicle," and the manner of death was listed as "Accident." R. Doc. 22-3, pp. 51-54. Similarly, Galmon's cause of death was noted as "Blunt force injuries of neck and thorax Due to driver struck by other vehicle," and the manner of death was noted as "Accident." R. Doc. 22-4, p. 64. It is not clear from a review of the record whether the coroner's reports were introduced at trial. Regardless, the evidence, as discussed, was sufficient for a rational trier of fact to find Matthews guilty of both counts of vehicular homicide.

[76] R. Doc. 1-1, p. 13.
[77] R. Doc. 22-16, p. 45.
[78] R. Doc. 22-16, p. 46.
[79] R. Doc. 22-16, p. 46.
[80] R. Doc. 22-16, p. 47.

which included broken ribs and punctured lungs, which required a chest tube.[81] Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the surviving victims suffered "serious bodily injury" to support Matthews' conviction on first degree negligent injuring, such that this argument is also without merit.

### C. Claim 3: Convictions Based on Fruits of a Warrantless Blood Test

Before trial, defense counsel filed a Motion to Declare Louisiana Revised Statute 32:666(A)(1)(a)(i) Unconstitutional and Motion to Suppress Evidence, which sought to suppress evidence regarding Matthews' blood alcohol concentration taken from the blood sample analyzed by the state police.[82] The trial court denied the motion,[83] and the First Circuit and Louisiana Supreme Court denied writs without reasons.[84] In the trial court's opinion denying the Motion to Suppress, it found that exigent (urgent) circumstances existed that made a warrantless blood draw reasonable.[85] Further, because Matthews' rights were not "seriously affected" by the statute in question, considering the urgent circumstances, the trial court held that Matthews could not challenge the statute's constitutionality.[86]

The trial court identified the correct legal principal from *Missouri v. McNeely*, namely that exigency created by the natural metabolization of alcohol in the blood stream must be considered on a case-by-case basis based on the totality of the circumstances.[87] The trial court then identified

---

[81] R. Doc. 22-16, p. 53.
[82] R. Doc. 22-4, pp. 27-29. Claim 3 was raised tangentially on direct appeal, but it was also raised directly through the pretrial motion. In declining to discuss this claim in detail on direct appeal, the First Circuit noted that the claim had already been litigated pretrial. *Matthews*, 2019 WL 927849, at *7 (the claim that the blood sample was unconstitutionally obtained "will not be discussed as this court has already addressed, and found meritless, the presumed underlying claim regarding the constitutionality of La. R.S. 32:666(A)(1) in the denial of defendant's prior writ application.").
[83] R. Doc. 22-6, pp. 13-22. This is the last reasoned decision.
[84] R. Doc. 22-6, pp. 23, 25.
[85] R. Doc. 22-6, p. 22.
[86] R. Doc. 22-6, p. 22.
[87] 569 U.S. 141, 144 (2013).

the circumstances that created the exigency in this particular case, including the fact that this was not a routine traffic stop but was, rather, a collision resulting in two fatalities and two seriously injured victims; that Matthews had seemingly engaged in delay tactics by failing to provide an adequate sample for a breath test, which he consented to; and the officer's testimony that he believed it may take over four hours to both apply for and obtain a warrant, that hours had already passed since the incident, and that if Matthews would have objected to the blood draw, the officer would have gotten a warrant.[88] The state trial court's determination that exigent circumstances existed so that the warrantless blood draw was permitted did not involve a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor was that decision based on an unreasonable determination of the facts in light of the evidence presented at trial. Therefore, this claim is without merit.[89]

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[90] Although Matthews has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.[91] Should Matthews try to appeal, a certificate of appealability should be denied.

---

[88] *See* R. Doc. 22-6, pp. 13-22.
[89] Matthews' argument that *Birchfield v. North Dakota*, 579 U.S. 438 (2016) requires a different result is incorrect. As pointed out by the State, *Birchfield* includes facts wholly different from those in this case. Further, the exigent circumstances exception to the warrant requirement for a blood test from *McNeely* was reaffirmed in *Birchfield*, (*Id.* at 474-475 ("Nothing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not.")), and the trial court's conclusion that exigent circumstances existed in this case is not contrary to and does not involve an unreasonable application of federal law.
[90] 28 U.S.C. § 2253(c)(1)(A).
[91] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[92] In cases where the federal court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[93] In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[94] Here, reasonable jurists would not debate the denial of Matthews' habeas application or the correctness of the procedural or substantive rulings.

## VI. Conclusion and Recommendation

Matthews' claims 4 and 6 for ineffective assistance of counsel and for lack of due process arising from convictions based on an indictment not filed in open court are unexhausted, procedurally defaulted, and not subject to review in this Court. For Matthews' remaining claims, he has failed to show that the state courts' decisions denying those claims were contrary to, or involved an unreasonable application of, federal law or involved unreasonable fact determinations, such that he cannot meet the standard for habeas relief. Therefore,

**IT IS RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By A Person in State Custody, filed by Dedrick Matthews, be **DENIED** and that this case be **DISMISSED WITH PREJUDICE**.

---

[92] 28 U.S.C. § 2253(c)(2).
[93] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).
[94] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**IT IS FURTHER RECOMMENDED** that, if Matthews seeks to file an appeal in this case, a certificate of appealability be denied.

### ORDER

Considering the recommendation for dismissal of all claims, **IT IS ORDERED** that the pending Motion for Bail During the Pendency of the Habeas Corpus Proceedings[95] and Motion for Summary Judgment,[96] filed by Petitioner Dedrick Matthews, are **DENIED**, without prejudice to reurging should the recommendation for dismissal of his habeas case not be adopted.

Signed in Baton Rouge, Louisiana, on August 26, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[95] R. Doc. 44.
[96] R. Doc. 45.  The Motion for Summary Judgment does not include any new evidence or make any arguments not already urged.